**GERMANTOWN CAB CO., Petitioner**

v.

**PHILADELPHIA PARKING AUTHORITY, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 5, 2009.

Decided April 28, 2010.

should she continue her efforts to establish          that she bears the credentials for licensure.

Michael S. Henry, Philadelphia, for petitioner.

Alan C. Kohler, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and SIMPSON, Judge, and LEAVITT, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

Germantown Cab Company petitions for review of an adjudication of the Philadelphia Parking Authority imposing a $1,725 fine upon Germantown Cab and suspending the operation of one of its cabs for 30 days. The Authority imposed these sanctions because it found that Germantown Cab had violated the Authority's taxicab regulation. Germantown Cab challenges the adjudication as invalid as a matter of law because the regulation in question had not been promulgated in accordance with the Commonwealth Documents Law[1] and, as such, was unenforceable. It follows, according to Germantown Cab, that the Authority's adjudication is also a nullity. We agree and reverse the adjudication.

## Background

In 1947, the General Assembly created municipal parking authorities with the enactment of the Parking Authorities Law, Act of June 5, 1947, P.L. 458, *as amended,* 53 P.S. §§ 341–356. This law granted all municipal parking authorities the power and duty to regulate on-street and off-street parking. In 2001, the General Assembly codified and amended the Parking Authorities Law, placing it in Title 53 of the Consolidated Statutes, "General Local Government Code," 53 Pa.C.S. §§ 5501–5517. The consolidated statute, *inter alia,* established an entirely separate statutory regime for Philadelphia's parking authority.[2] In 2004, the General Assembly amended Title 53 to give the Philadelphia Parking Authority the additional responsibility to regulate taxicab and limousine service in and around Philadelphia. Act of July 16, 2004, P.L. 758, No. 94 (Act 2004–94).

Prior to the enactment of Act 2004–94, the Pennsylvania Public Utility Commis-

---

1. Act of July 31, 1968, P.L. 769, *as amended,* 45 P.S. §§ 1102–1602, and 45 Pa.C.S. §§ 501–907, which, collectively, are known as the "Commonwealth Documents Law." This was the official short title of the 1968 enactment. *See* Section 101 of the Act of July 31, 1968, P.L. 769.

2. The 2001 Parking Authorities Law differentiates between parking authorities in cities of the first class, and other parking authorities. Philadelphia is Pennsylvania's only city of the first class.

sion (PUC) had been responsible for the regulation of taxicab and limousine service throughout Pennsylvania. With respect to Philadelphia, the PUC's responsibilities were set forth in the Medallion Act, 66 Pa.C.S. §§ 2401–2416. Act 2004–94 repealed the Medallion Act and replaced it with Chapter 57 of the Parking Authorities Law. 53 Pa.C.S. §§ 5701–5745.[3] The legislature established the effective date of Chapter 57 as 270 days from July 16, 2004 (April 13, 2005) or the day on which notice appeared in the *Pennsylvania Bulletin* of a transfer of regulatory authority from the PUC to the Authority, whichever day occurred earlier. *See* Sections 24 and 25 of Act 2004–94, 53 Pa.C.S. § 5701 (historical and statutory notes).[4] Notice of the transfer appeared in the March 12, 2005, edition of the *Pennsylvania Bulletin.* 35 Pa. B. 1737 (2005). Accordingly, Chapter 57 became the law on March 12, 2005.

In June 2005, the Authority promulgated its own taxicab regulation.[5] It was under authority of that regulation that the Authority issued citations to Germantown Cab, which citations are the subject of this appeal.

### Factual and Procedural History

The facts are not in dispute. On November 10, 2008, a Taxicab Division Inspector for the Authority encountered Taxicab G–45, owned by Germantown Cab, dropping off a passenger at 30th Street Station in Philadelphia.[6] He inspected the

---

3. The General Assembly had first attempted to transfer regulation of taxicab and limousine service to the Authority by enacting the Act of December 30, 2002, P.L. 2001, No. 230, which added Chapter 57; however, this act was held unconstitutional by our Supreme Court in *City of Philadelphia v. Commonwealth*, 575 Pa. 542, 838 A.2d 566 (2003) because it was enacted in violation of the Pennsylvania Constitution's single subject rule. Therefore, Act 2004–94 reenacted and amended Chapter 57.

4. Those sections provide in relevant part:
   Section 24. The Pennsylvania Public Utility Commission shall transmit notice of the entry into the agreement under section 22(4) of this act to the Legislative Reference Bureau for publication in the Pennsylvania Bulletin.
   Section 25. This act shall take effect as follows:
   (1) The following provisions shall take effect in 270 days or on the date of publication of the notice under Section 24 of this act, whichever is earlier:
   (i) The addition of 53 Pa.C.S. Ch. 57.
         \*     \*     \*
   Sections 24 and 25 of Act 2004–94, 53 Pa.C.S. § 5701(notes). Section 22(4) states:
   The commission shall assist the authority to prepare for the transfer and to ensure a smooth transition with as little disruption as possible to public safety, consumer convenience and the impacted industries. The commission and the authority are empowered to resolve by mutual agreement any jurisdictional issues that may be associated with the transfer. Any agreement shall be reported to the Appropriations Committee of the Senate and the Appropriations Committee of the House of Representatives and will be considered effective unless either the Senate or the House of Representatives rejects the submitted agreement by resolution within ten legislative days of submission. Upon becoming effective, an agreement shall be published in the Pennsylvania Bulletin.
   Section 22(4) of Act 2004–94, 53 Pa.C.S. § 5701 (notes).

5. The Authority amended the regulation on July 29, 2008. The Authority's regulation is available on its website. The Philadelphia Parking Authority–Taxicab and Limousine Regulations, July 29, 2008, http://www.philapark.org/H2/regulations.html.

6. In order to operate, all taxicabs must have a certificate of public convenience. A taxicab must also have a medallion in order to provide call and demand (hail) service within the City of Philadelphia. 53 Pa.C.S. § 5714. Some taxicabs have "partial rights" meaning that they do not have medallions but may provide service within specified areas of Philadelphia, may transport persons to Philadelphia and may pick up passengers in Philadel-

taxi and discovered that its inspection sticker had expired; both front tires were bald; and the right rear door was missing its rubber gasket. Each of these problems violated the Authority's taxicab regulation. Accordingly, the Inspector, David Rotan, issued three citations to Germantown Cab:

(1) Citation T–03840 was issued for operating a taxi without a current Authority inspection, in violation of Regulation Section 15.a.

(2) Citation T–03841 was issued for allowing Taxicab G–45 to operate with bald tires, in violation of Regulation Section 13.b.

(3) Citation T–03842 was issued for allowing Taxicab G–45 to operate with a missing door gasket, in violation of Regulation Section 13.

Reproduced Record at 1, 3 and 5 (R.R. ——).[7]

Germantown Cab objected to the citations on the basis that the Authority did not properly promulgate the regulation that Germantown Cab had been charged with violating. This argument was rejected. Based on Rotan's evidence, the hearing officer sustained the citations and imposed a $1,725 fine and a 30–day suspension of Taxicab G–45's ability to operate.

Germantown Cab petitioned this Court for review and, simultaneously, filed a motion to stay enforcement of the Parking Authority's order. The stay was first denied by the Philadelphia Parking Authority

and then by this Court. This Court denied the stay concluding, *inter alia*, that Germantown Cab was not likely to succeed on the merits. *Germantown Cab Co. v. Philadelphia Parking Authority*, (Pa.Cmwlth., No. 1252 C.D.2009, filed July 29, 2009).

Germantown Cab's challenge to the Authority's taxicab regulation is not the first. Various taxicab drivers and companies have sought declaratory and injunctive relief, as well as writs of mandamus and prohibition from this Court, to enjoin enforcement of the Authority's regulation. These complaints were transferred to the Court of Common Pleas of Philadelphia County because this Court held that the Philadelphia Parking Authority was a local agency. *Blount v. Philadelphia Parking Authority*, 920 A.2d 215 (Pa.Cmwlth.2007) (en banc) (*Blount I*). On appeal, our Supreme Court reversed. It held that the Authority "is a Commonwealth agency for the purposes of regulating taxicabs" and not a local agency. *Blount v. Philadelphia Parking Authority*, 600 Pa. 277, 289, 965 A.2d 226, 234 (2009) (*Blount II*). Accordingly, it remanded the complaints to this Court for further proceedings.

On remand, we sustained the Authority's preliminary objections for the reason that the *Blount* petitioners had available adequate remedies at law in the form of appeals from the Authority's adjudications. *Blount v. Philadelphia Parking Authority*, (Pa.Cmwlth., No. 265 M.D.2006, filed September 8, 2009) (*Blount III*). Indeed, one such appeal is the case *sub judice*.[8]

phia if the request for service is received by call to the radio dispatch service. 53 Pa.C.S. § 5714(d). Germantown Cab is a partial rights company.

7. Regulation Section 15.a states:
   All vehicles are required to be inspected by the Authority twice annually at approximately six-month intervals.
   R.R. 33. Regulation Section 13.b requires a taxicab to satisfy vehicle standards adopted by

the Department of Transportation in 67 Pa. Code Chapter 175. R.R. 26. Regulation Section 13 relates generally to equipment standards and does not refer, specifically, to door gaskets but does refer to safety. *See, e.g.,* Regulation Section 13.f.iii, requiring all doors to be "in good operating condition." R.R. 27.

8. In addition to the instant appeal, companion cases are docketed at 1139 C.D. 2009, 1253 C.D. 2009 and 1444 C.D. 2009. All

## Issue

Germantown Cab raises one issue on appeal. It asserts that the Philadelphia Parking Authority's taxicab regulation is invalid and unenforceable because it was not promulgated in accordance with the Commonwealth Documents Law. Germantown Cab does not challenge the Authority's determination that it violated the regulation. Despite the other above-described litigation, Germantown Cab's challenge to the Authority's taxicab regulation presents an issue of first impression.

## Promulgation of Regulations

■ We begin with a review of the law governing the promulgation of Commonwealth agency regulations. An agency derives its power to promulgate regulations from its enabling act. *Campo v. State Real Estate Commission*, 723 A.2d 260, 262 (Pa.Cmwlth.1998). An agency's regulations are valid and binding only if they are: "(a) adopted within the agency's granted power, (b) issued pursuant to proper procedure, and (c) reasonable." *Tire Jockey Service, Inc. v. Department of Environmental Protection*, 591 Pa. 73, 108, 915 A.2d 1165, 1186 (2007). As we explained in *Borough of Bedford v. Department of Environmental Protection*, 972 A.2d 53 (Pa.Cmwlth.2009), when promulgating a regulation, an agency must comply with the requirements set forth in the Commonwealth Documents Law, the Commonwealth Attorneys Act[9] and the Regulatory Review Act.[10] Regulations promulgated in accordance with these requirements have the force and effect of law. *Snizaski v. Workers' Compensation Appeal Board (Rox Coal Company)*, 586 Pa. 146, 163, 891 A.2d 1267, 1277–1278 (2006). A regulation not promulgated in accordance with the statutory requirements will be declared a nullity. *Borough of Bedford*, 972 A.2d at 62.

■ In general, the purpose of the Commonwealth Documents Law is to promote public participation in the promulgation of a regulation. To that end, an agency must invite, accept, review and consider written comments from the public regarding the proposed regulation; it may hold public hearings if appropriate. 45 P.S. § 1202.[11] After an agency obtains the Attorney General's approval of the form and legality of the proposed regulation, the agency must deposit the text of the regulation with the Legislative Reference Bureau for publication in the *Pennsylvania Bulletin*. Section 205, 207 of the Commonwealth Documents Law, 45 P.S. §§ 1205, 1207.[12]

■ The legislature has identified what is meant by an "agency" for purposes of the Commonwealth Documents Law. It has defined an "agency" as:

the Governor or any department, departmental administrative board or com-

---

appeals were argued seriately before the Court.

9. Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. §§ 732–101–732–506.

10. Act of June 25, 1982, P.L. 633, *as amended*, 71 P.S. §§ 745.1–745.15.

11. It states, in relevant part, as follows:

Before taking action upon any administrative regulation or change therein the agency shall review and consider any written comments submitted pursuant to section 201 and may hold such public hearings as seem appropriate.
45 P.S. § 1202.

12. Section 205 actually refers to approval by the Department of Justice. However, the Department of Justice has been abolished and the duty to review regulations has been transferred to the Attorney General. *Small v. Horn*, 554 Pa. 600, 608 n. 4, 722 A.2d 664, 668 n. 4 (1998).

mission, officer, *independent board or commission, authority or other agency of this Commonwealth* now in existence or hereafter created....

Section 102(3) of the Commonwealth Documents Law, 45 P.S. § 1102(3) (emphasis added). Thus, any "independent commission" or any "other agency of this Commonwealth," including one not in existence at the time of the enactment of the Commonwealth Documents Law, is subject to its terms.

### Positions of Parties

Germantown Cab does not challenge the substance of the Authority's taxicab regulations. It claims, simply, that the Authority's 2005 taxicab regulation is a nullity because it was not lawfully adopted. The Commonwealth Attorneys Act and the Regulatory Review Act each govern the process by which Commonwealth agencies promulgate regulations. However, Germantown Cab's appeal is based only upon the Commonwealth Documents Law. Specifically, Germantown Cab faults the Authority for not filing its taxicab regulation with the Legislative Reference Bureau, as required by Section 207 of the Commonwealth Documents Law. 45 P.S. § 1207.[13]

As it must, the Philadelphia Parking Authority concedes that it is a Commonwealth agency. The Parking Authorities Law describes the Philadelphia Parking Authority as "an independent administrative commission for the regulation of taxicabs." 53 Pa.C.S. § 5505(d)(23). Our Supreme Court has held that the Authority is an "independent Commonwealth agency." *Blount II*, 600 Pa. at 288, 965 A.2d at 234. However, the Authority goes on to argue that because it is "a unique hybrid agency with a local focus," it is exempt from the Commonwealth Documents Law. Authority's Brief at 15.

The Authority notes that the Parking Authorities Law distinguishes the Philadelphia Parking Authority from any other Commonwealth agency:

> Due to the size, total population, population density and volume of both tourism and commerce of a city of the first class, it may be more efficient to regulate the taxicab and limousine industries through an agency of the Commonwealth with local focus than an agency with diverse Statewide regulatory duties.

53 Pa.C.S. § 5701.1(3). In addition, our Supreme Court has described the Authority as "an entity unlike any other in Pennsylvania." *Blount II*, 600 Pa. at 289, 965 A.2d at 234. Because of its unique character, the Authority contends that the General Assembly must have intended it to be exempt from the rulemaking procedures imposed upon other Commonwealth agencies.[14] The Authority finds specific support for this exemption in two separate provisions of the Parking Authorities Law.

First, the Authority points to Section 5722, which gives it the power to promulgate regulations, and states:

> The authority may prescribe such rules and regulations as it deems necessary to govern the regulation of taxicabs within

---

**13.** It states, in relevant part, as follows:

> The agency text of all administrative and other regulations, and changes therein, certified by the executive officer, chairman or secretary of the agency, shall be deposited with the Legislative Reference Bureau.
>
> 45 P.S. § 1207.

**14.** The Authority acknowledges that when promulgating its regulations, including taxicab regulations, the Public Utility Commission is subject to the requirements of the Commonwealth Documents Law, the Commonwealth Attorneys Act and the Regulatory Review Act. *See Popowsky v. Pennsylvania Public Utility Commission*, 589 Pa. 605, 617, 910 A.2d 38, 45 (2006).

cities of the first class under this chapter. The authority has the powers set forth in this section *notwithstanding any other provision or law* or of the articles of incorporation of the authority. 53 Pa.C.S. § 5722 (emphasis added). The Authority argues that the Commonwealth Documents Law is an "other . . . law" referenced in Section 5722 that can be disregarded.[15]

Second, the Authority points to Section 5505(d)(25), which authorizes it to choose its own chief counsel and states:

> (d) An authority has all powers necessary or convenient for the carrying out of the purposes under this section, including:
>
>       \*      \*      \*
>
> (25) In cities of the first class, to appoint and fix the compensation of chief counsel and assistant counsel to provide it with legal assistance. The provisions of the act of October 15, 1980 (P.L. 950, No. 164), known as *the Commonwealth Attorneys Act, shall not apply to parking authorities in cities of the first class.*

53 Pa.C.S. § 5505(d)(25) (emphasis added). The Authority construes Section 5505(d)(25) to exempt it from every provision of the Commonwealth Attorneys Act, including the provision that requires the

Attorney General to approve proposed regulations for form and legality prior to their publication. 71 P.S. § 732–204(b).[16] The Authority then reasons that the Commonwealth Attorneys Act and the Commonwealth Documents Law both relate to the same subject matter, *i.e.,* the promulgation of regulations, and must be construed *in pari materia.* Because the Authority is exempt from the Commonwealth Attorneys Act, it follows that the Authority is also exempt from the Commonwealth Documents Law.

In response, Germantown Cab notes that had the General Assembly meant to exempt the Authority from the Commonwealth Documents Law, it would have done so directly and expressly. The Commonwealth Documents Law itself requires that its terms apply to all Commonwealth agency regulations unless the legislature provides an express exemption. Section 508 states:

> No subsequent statute shall be held to supersede or modify the provisions of this part except to the extent that such statute shall do so expressly.

45 Pa.C.S. § 508. In Germantown Cab's view, the Parking Authority's strained reading of Chapter 57 does not measure up to the "express" exemption contemplated in Section 508.

In support, Germantown Cab cites numerous statutes enacted subsequent to the

---

**15.** The Authority asserts that its Advisory Committee, which was created by 53 Pa. C.S. § 5702, provides oversight over its rulemaking activities. Section 5702(a) of the Parking Authorities Law provides that the Authority "shall submit to the advisory committee issues and questions for their consideration regarding the regulation, enforcement, compliance and operation of taxicabs," but all actions of the advisory committee are "strictly advisory." 53 Pa. C.S. § 5702(a). The advisory committee is not a substitute for the role of the Attorney General and the Independent Regulatory

Review Commission in the regulatory review process.

**16.** Section 301(10) of the Commonwealth Attorneys Act also requires the General Counsel to review and approve regulations of executive agencies for form and legality. 71 P.S. § 732–301(10). The term "executive agencies" does not include independent agencies such as the Authority. 71 P.S. § 732–102. Therefore, the Authority is not required to submit its taxicab regulations to the General Counsel.

Commonwealth Documents Law that provide the express exemption contemplated by Section 508. One example is the Agricultural Development Act, Act of July 2, 1984, P.L. 537, 3 P.S. §§ 1301–1314, which authorized the Department of Agriculture and the Department of Community and Economic Development to adopt regulations without going through the procedures of the Commonwealth Documents Law. However, these regulations had to be replaced in one year by regulations that complied with those procedures.[17] The statutory exemption specifically names the "Commonwealth Documents Law;" provides its pamphlet law citation; and identifies the precise statutory provisions from which the Departments' regulations are exempt. By contrast, the Parking Authorities Law does not name the Commonwealth Documents Law or cite to any of its provisions.

Germantown Cab also points to Section 22(2) of Act 2004–94. It states:

**17.** Section 10 of the Agricultural Development Act states, in relevant part, as follows:

(a) **General rule.**—The [Departments of Agriculture and Community and Economic Development] shall promulgate such rules, regulations, guidelines, forms or procedures and standards necessary to carry out this act.

(b) **One-year exemption from review.**—In order to facilitate the speedy implementation of this program, the [Departments] shall have the power and authority to promulgate, adopt and use guidelines which shall be published in the Pennsylvania Bulletin. *The guidelines shall not be subject to review pursuant to section 205 of the act of July 31, 1968 (P.L. 769, No. 240), referred to as the Commonwealth Documents Law,* sections 204(b) and 301(10) of the act of October 15, 1980 (P.L. 950, No. 164), known as the Commonwealth Attorneys Act, or the act of June 25, 1982 (P.L. 633, No. 181), known as the Regulatory Review Act, and ... *shall be effective for a period not to exceed one year from the effective date of this act.*

*Regulations,* orders, programs and policies *of the commission* under 66 Pa.C.S. Ch. 24 [the Medallion Act] and concerning limousine service regulation within cities of the first class shall *remain in effect until specifically amended, rescinded or altered by the authority.*

Section 22(2) of Act 2004–94, 53 Pa.C.S. § 5701(notes) (emphasis added).[18] Germantown Cab argues that if the Authority had been free to promulgate its own regulations without regard to the procedures in the Commonwealth Documents Law, then it would have been unnecessary for the legislature to provide this grace period to give the Authority time to promulgate its own regulations.

### Analysis

■ We agree with Germantown Cab that the Authority must comply with the Commonwealth Documents Law when it promulgates a regulation. The issue is

(c) **Expiration of exemption.**—... *after the expiration of the one-year period, all guidelines shall expire and shall be replaced by regulations which shall have been promulgated, adopted and published as provided by law.*

3 P.S. § 1310 (emphasis added).

Other statutes containing similar language include, but are not limited to: the Farm Safety and Occupational Health Act, Act of December 12, 1994, P.L. 944, 3 P.S. §§ 1901–1915, § 1913; the Consolidated Weights and Measures Act, 3 Pa.C.S. §§ 4101–4194, § 4112(d); the Pennsylvania Race Horse Development and Gaming Act, 4 Pa.C.S. §§ 1101–1904, § 1203; the Domestic and Sexual Violence Victim Address Confidentiality Act, 23 Pa.C.S. §§ 6701–6713, § 6712; and the Public School Code of 1949, Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702, § 13–1376(c.8).

**18.** Section 22 deals with issues regarding the transfer of taxicab oversight including employees and funds.

one of statutory construction and, as always, the plain language guides us in this regard. Our Supreme Court has explained

> that the best indication of legislative intent is the language of a statute. . . . Where the words of a statute are clear and free from ambiguity, the legislative intent is to be gleaned from those very words.

*Gardner v. Workers' Compensation Appeal Board (Genesis Health Ventures)*, 585 Pa. 366, 372, 888 A.2d 758, 761–762 (2005) (citations omitted). Only where the meaning of the words is not clear do we resort to the principles set forth in the Statutory Construction Act of 1972, 1 Pa.C.S. §§ 1501–1991. Such an analysis is not necessary here.

First, and foremost, the Parking Authorities Law does not expressly exempt the Authority from the Commonwealth Documents Law. Section 5722 of the Parking Authorities Law, on which the Authority relies, does not express such an exemption. Section 5722 gives the Authority the power to adopt taxicab regulations "notwithstanding any other provision or law." 53 Pa.C.S. § 5722. The provision means just that, *i.e.*, that regardless of what other statutes may state about the powers of any authority, including other parking authorities, the Philadelphia Parking Authority has the power to adopt regulations. Indeed, at oral argument, the Authority acknowledged that it had never adopted a regulation in its history, which began in 1950, until it promulgated its taxicab regulation. Section 5722 establishes the Authority's *power* to adopt taxicab regulations. It is silent about the *procedures* by which the Authority will exercise that power. Those procedures are set forth in the Commonwealth Documents Law, and they apply to all Commonwealth agencies when they exercise their statutory power to promulgate regulations.

Second, the Commonwealth Documents Law reaches all agencies, past, present and future, regardless of their mission. The Philadelphia Parking Authority may have a unique mission but, then, so does the Gaming Board. The mission of the agency is not determinative. Under Section 508, all agencies are subject to the terms of the Commonwealth Documents Law unless the legislature provides an express exemption.[19]

---

19. Part, but not all, of the Commonwealth Documents Law has been consolidated. The Authority argues that Section 508, in the consolidated part, does not apply to Section 207, which has not yet been consolidated. Section 508 is part of Chapter 5, entitled "General Provisions," which, in turn, is a chapter in "Part II, Publication and Effectiveness of Commonwealth Documents." 45 Pa.C.S. § 508. Part II has three chapters, *i.e.*, 5, 7 and 9. The remainder of the Commonwealth Documents Law has yet to be consolidated. Prior to this partial consolidation, Section 605 of the Commonwealth Documents Law stated:

> No subsequent act of Assembly shall be held to supersede or modify the provisions of this act except to the extent that such act of Assembly shall do so expressly.

45 P.S. § 1605, repealed by the Act of July 9, 1976, P.L. 877, No. 160. Thus, it has been the law since 1968 that the terms of the Commonwealth Documents Law apply to all agencies, unless there is an express exemption.

Section 508, as a "general provision," applies to all Commonwealth "documents" and, thus, even the yet to be consolidated parts of the Commonwealth Documents Law. Lest there be any doubt, a "document" in Part II is defined as a "regulation." 45 Pa.C.S. § 501. Section 208 of the unconsolidated parts of the Commonwealth Documents Law requires compliance with Section 409, which has been repealed and replaced with Chapter 5 of Title 45 of the consolidated statutes. In sum, Section 508 has general application to the promulgation of all regulations in the Commonwealth.

What is more, Section 208 of the unconsolidated portions of the Commonwealth Documents Law states that regulations

The General Assembly knows how to provide this exemption. It has done so on many occasions, as Germantown Cab has observed with respect to the Agricultural Development Act. The legislature has been consistent in its precision with respect to these exemptions. Not only does it name the "Commonwealth Documents Law," it also provides its official citation. This paradigm was followed in the recent Pennsylvania Race Horse Development and Gaming Act, which authorizes the Gaming Control Board to "promulgate temporary regulations not subject to: (1) Sections 201, 202 and 203 of the act of July 31, 1968 (P.L. 769, No. 240), referred to as the Commonwealth Documents Law." 4 Pa.C.S. § 1203(a)(1). In vain will one search the Parking Authorities Law for comparable language.

Third, the Authority's reliance on Section 5505(d)(25), which provides a very narrow exemption from a single provision of the Commonwealth Attorneys Act, is misplaced. Section 5505(d)(25) gives the Authority the power "to appoint and fix the compensation of chief counsel and assistant counsel." 53 Pa.C.S. § 5505(d)(25). Stated otherwise, it qualifies the power of the Office of General Counsel in Section 301(1) of the Commonwealth Attorneys Act, 71 P.S. § 732–301(1), to appoint the legal staff of Commonwealth agencies.

The Authority would extend the qualification in Section 5505(d)(25) to provisions of the Commonwealth Attorneys Act that

have nothing to do with choosing legal counsel, such as the need for an agency to submit its proposed regulations to the Attorney General for review.[20] Our Supreme Court has cautioned against a broad reading of qualifying language in a statute, citing a

> [w]ell-established canon of construction that courts should generally apply qualifying words or phrases to the words immediately preceding them. Qualifying words do not extend to or include other words, phrases, or clauses more remote, unless such extension or inclusion is clearly required by the intent or meaning of the context or disclosed by an examination of the entire act.

*Commonwealth of Pennsylvania v. Packer*, 568 Pa. 481, 491, 798 A.2d 192, 198 (2002) (citations and quotation omitted). In short, the qualification in Section 5505(d)(25) cannot be extended to the entire Commonwealth Attorneys Act, as suggested by the Authority.

In sum, the Authority was required to follow the requirements of the Commonwealth Documents Law when it adopted the taxicab regulation, and it did not do so. Section 208 states:

> An administrative regulation or change therein promulgated after the effective date of this act shall not be valid for any purpose until filed by the Legislative Reference Bureau.

promulgated after the effective date of this act shall not be valid for any purpose until filed by the Legislative Reference Bureau, as provided in section 409 [repealed, replaced by 45 Pa.C.S. § 501 et seq.]. 45 P.S. § 1208. Section 508 bolsters what is already contained in Section 208, namely, that all agencies must comply with the Commonwealth Documents Law.

It must be that the General Assembly believes that Section 508 has general application or it would not provide exemptions in

such precise terms as it did, for example, in the recently enacted Gaming Act.

**20.** Because the Authority is not exempt from the regulatory review procedures of the Commonwealth Attorneys Act, we will not address its argument that a total exemption from the Commonwealth Attorneys Act means that an agency is necessarily exempt from the Commonwealth Documents Law because those statutes must be read *in pari materia*.

45 P.S. § 1208. Accordingly, the Authority's taxicab regulation does not have the force and effect of law; it is not "valid for any purpose." *Id.*

The Authority asserts that without its taxicab regulation, there is a regulatory void. As noted above, Section 22(2) of Act 2004–94 provided that the taxicab regulations of the PUC "*shall remain in effect until specifically amended, rescinded or altered by the authority.*" Section 22(2) of Act 2004–94, 53 Pa.C.S. § 5701 (notes) (emphasis added).[21] The Authority construes Section 22(2) to mean that the PUC's regulations ceased to have any efficacy once the PUC transferred authority over Philadelphia taxicab service to the Authority. It also argues that the PUC's taxicab regulations cannot still stand in Philadelphia because they were promulgated under the Medallion Act, which was repealed when Chapter 57 went into effect on March 12, 2005. Finally, the Authority observes that it "amended, rescinded or altered" the PUC's taxicab regulations when it adopted its own regulation in 2005, which action nullified the effect of the PUC's regulations in Philadelphia.

The Authority's concern about a regulatory void is valid as a matter of good government. However, that concern does not relieve the Court of the obligation to enforce the applicable statutes as they are written. In any case, the Authority has options. The Authority may be able to take enforcement actions for violation of Chapter 57, independent of any implementing regulation.[22] It is not as clear to the Court, as it is to the Parking Authority, that the PUC's regulations have been nullified where the Authority has not yet adopted a valid regulation. In any case, the Commonwealth Documents Law allows an agency to promulgate a regulation on an emergency basis if

> [t]he agency for good cause finds … that the procedures specified in sections 201 and 202 [notice of proposed rule making and consideration of written comments] are in the circumstances impracticable, unnecessary or contrary to the public interest.

45 P.S. § 1204(3). Finally, of course, the Authority may seek relief from the legislature.

## Conclusion

We hold that the taxicab regulation of the Philadelphia Parking Authority is void and unenforceable because it was not promulgated in accordance with the Commonwealth Documents Law. Accordingly, we reverse the Authority's adjudication imposing sanctions upon Germantown Cab.

## ORDER

AND NOW, this 28th day of April, 2010, the order of the Philadelphia Parking Authority dated June 11, 2009, in the above captioned matter is hereby REVERSED.

---

21. *See supra* note 18 and accompanying text for full text of Section 22(2).

22. The Authority itself suggests that even without a regulation, it should be permitted to take enforcement actions against taxicab operators that violate Chapter 57, such as operating without a certificate of public convenience in violation of 53 Pa.C.S. § 5711.