36 A.3d 105

GERMANTOWN CAB CO., Appellee

v.

PHILADELPHIA PARKING AUTHORITY, Appellant.

Germantown Cab Co., Appellee

v.

Philadelphia Parking Authority, Appellant.

Sawink, Inc., Appellee

v.

Philadelphia Parking Authority, Appellant.

Germantown Cab Co., Appellee

v.

Philadelphia Parking Authority, Appellant.

Supreme Court of Pennsylvania.

Argued Sept. 14, 2011.

Decided Jan. 20, 2012.

134

Mitchell L. Bach, Eckert Seamans Cherin & Mellott, LLC, Philadelphia, Bryan L. Heulitt Jr., Philadelphia Parking Authority, Robert B. Hoffman, Alan C. Kohler, Elizabeth Kreder McCoy, Harrisburg, Carl Robert Schultz, Eckert Seamans Cherin & Mellott, LLC, Dennis Gerard Weldon Jr., Philadelphia, for Philadelphia Parking Authority.

Michael Sheridan Henry, Drew Salaman, Salaman Law Offices, P.C., Philadelphia, for Germantown Cab Co.

Michael Sheridan Henry, Philadelphia, for Sawink, Inc.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## OPINION

Justice SAYLOR.

In 2001, the Pennsylvania General Assembly divested the Mayor of Philadelphia of appointment authority for members

of the governing body of the Philadelphia Parking Authority and placed such prerogative with the Governor of Pennsylvania. In 2004, the Legislature allocated to the Authority certain regional regulatory functions pertaining to taxi and limousine services. This Court has previously determined that the Parking Authority is a Commonwealth agency for purposes of such regulation. The Authority has maintained, nonetheless, that, in light of the primarily local focus of its regulatory concern, it should not be held to statutory rulemaking procedures and requirements generally applicable to other Commonwealth agencies, but which the Authority considers to be inapposite and burdensome as applied to it. In a unanimous, *en banc* decision, the Commonwealth Court disagreed, and, presently, we affirm.

## I. Background

Appellees, Germantown Cab Company and Sawink, Inc., suffered fines and suspensions for violations of regulations promulgated by the Philadelphia Parking Authority (the "Authority" or the "PPA"), including those pertaining to driver licensure, currency of vehicle inspection, and tire tread wear. The companies pursued declaratory relief and appellate remedies, claiming, solely, that the Authority's regulations were invalid, since they were not filed with the Legislative Reference Bureau in accordance with the Commonwealth Documents Law,[1] which is generally applicable to Commonwealth agencies.[2] The Authority took the position that its regulations were proper, albeit they were not promulgated in accordance

1. Act of July 31, 1968, P.L. 769, No. 240 (as amended 45 P.S. §§ 1102–1602 (the "Unconsolidated CDL"), and 45 Pa.C.S. §§ 501–907 (the "Consolidated CDL") (and, collectively, the "CDL")). *See* 45 P.S. §§ 1205, 1207.

2. ˙ The declaratory judgment proceedings were dismissed based on the availability of alternative remedies via the appeal proceedings. *See Blount v. PPA*, No. 265 M.D. 2006 (Pa.Cmwlth. Sept. 8, 2009). The appeal proceedings traveled a circuitous route, as they also were initially dismissed by the Commonwealth Court upon a determination that it lacked jurisdiction, *see Blount v. PPA*, 920 A.2d 215 (Pa.Cmwlth. 2007) (*en banc*), but such decision subsequently was reversed. *See Blount v. PPA*, 600 Pa. 277, 965 A.2d 226 (2009).

with the CDL, in light of the Authority's unique local focus and consistent with provisions of its enabling legislation.[3]

The Commonwealth Court ultimately sustained the appeals. *See, e.g., Germantown Cab Co. v. PPA*, 993 A.2d 933, 936 (Pa.Cmwlth.2010) (*en banc* ).[4] The intermediate court's rationale was anchored on this Court's decision holding that the PPA "is a Commonwealth agency for the purposes of regulating taxicabs." *Id.* at 936 (quoting *Blount*, 600 Pa. at 289, 965 A.2d at 234); *see also id.* at 938. Thus, the court had little difficulty determining that the CDL's requirements imposed upon "an agency"—such as the requirement that an agency must give specified public notice of its intention to promulgate any administrative regulation, 45 P.S. § 1201—pertained on their terms. *See Germantown Cab*, 993 A.2d at 936, 938.[5]

Complementing this analysis, the Commonwealth Court reviewed the Authority's history, including: its creation upon the enactment of the 1947 Parking Authorities Law;[6] the reconstitution of the PPA's governing body in 2001 (resulting, *inter alia*, in the replacement of the complement of board members appointed by the Mayor of Philadelphia with a slate appointed by the Governor of Pennsylvania), *see* 53 Pa.C.S. § 5508.1; and the 2004 transfer—under Act 94—of a portion of the responsibility to regulate regional taxicab and limousine services from the Public Utility Commission to the Authority, *see* 53 Pa.C.S., Ch. 57 (captioned, "Taxicabs and Limousines in First Class Cities").

3. *See* Act of June 19, 2001, P.L. 287, No. 22 (as amended 53 Pa.C.S. §§ 5501–5517) (the "Parking Authorities Law"); Act of July 16, 2004, P.L. 758, No. 94 (as amended 53 Pa.C.S. §§ 5701–5745) ("Act 94").

4. The Commonwealth Court's opinions in the other captioned matters are unpublished.

5. *Accord id.* at 937–38 (explaining that the CDL defines "agency" to include "the Governor or any department, departmental administrative board or commission, officer, *independent board or commission, authority or other agency of this Commonwealth* now in existence or hereafter created...." (quoting 45 P.S. § 1102(3)) (emphasis in original)).

6. Act of June 5, 1947, P.L. 458 (as amended 53 P.S. §§ 341–356) (superseded).

In terms of taxicab and limousine services regulation, the Commonwealth Court explained that, prior to Act 94, the Pennsylvania Public Utility Commission (the "PUC") bore this responsibility throughout the Commonwealth, with the specific measures pertaining to Philadelphia directed by the Medallion Act.[7] The court further observed that Act 94 supplanted the Medallion Act—replacing it with Chapter 57 of the Parking Authorities Law, 53 Pa.C.S. §§ 5701–5745—and that, in June 2005, the Authority promulgated the regulations presently in issue.

The Commonwealth Court then undertook a broad review of the laws governing the promulgation of regulations by Commonwealth agencies, developing that agencies generally must comply not only with the CDL, but also with the Commonwealth Attorneys Act,[8] as well as the Regulatory Review Act.[9] The court noted that regulations promulgated in accordance with the requirements of these statutes have the force and effect of law; whereas, those not in compliance lack such effectiveness. *See Germantown Cab,* 993 A.2d at 937 (citing *Snizaski v. W.C.A.B. (Rox Coal Co.),* 586 Pa. 146, 163, 891 A.2d 1267, 1277–78 (2006), and *Borough of Bedford v. DEP,* 972 A.2d 53, 62 (Pa.Cmwlth.2009)); *see also* 45 P.S. § 1208 ("An administrative regulation or change therein promulgated after the effective date of this act shall not be valid for any purpose until filed by the Legislative Reference Bureau[.]"). Focusing, in particular, upon the CDL, the intermediate court discussed the salutary purposes of the statute in terms of the promotion of public participation; the related requirement that an agency invite, accept, review, and consider written comments from the public, *see id.* § 1202; the authority of agencies to conduct public hearings where appropriate, *see id.;* the requirement to obtain approval from the Attorney General as to legality, *see id.* § 1205; and the ultimate obligation to

7. Act of Apr. 4, 1990, P.L. 93, No. 21 (as amended 66 Pa.C.S. §§ 2401–2416) (superseded).

8. Act of Oct. 15, 1980, P.L. 950, No. 164 (as amended 71 P.S. §§ 732–101 to 732–506).

9. Act of June 25, 1982, P.L. 633, No. 181 (as amended 71 P.S. §§ 745.1 to 745.14).

deposit the text of the regulation with the Legislative Reference Bureau for publication in the Pennsylvania Bulletin. *See id.* §§ 1205, 1207.

Against this backdrop, the Commonwealth Court rejected the Authority's arguments that, as "a unique hybrid agency with a local focus,"[10] it should be deemed exempt from statutory rulemaking procedures generally applicable to Commonwealth agencies. According to the court, the applicability of the CDL does not turn on an agency's particular focus; rather, it applies by terms to "all agencies, past, present and future, regardless of their mission." *Germantown Cab,* 993 A.2d at 941. While recognizing that there are exceptions, the intermediate court determined that, under Section 508 of the CDL, these must be express. *See* 45 Pa.C.S. § 508 (prescribing that "[n]o subsequent statute shall be held to supersede or modify the provisions of this part *except to the extent that such statute shall do so expressly* " (emphasis added)). The court explained that the General Assembly had provided such express exemptions in other statutes, for example, the Agricultural Development Act, *see* 3 P.S. § 1310, and the Gaming Act, *see* 4 Pa.C.S. § 1203(a)(1). Additionally, that court commented, "[i]n vain will one search the Parking Authorities Law for comparable language." *Germantown Cab,* 993 A.2d at 942; *accord id.* at 941 ("First, and foremost, the Parking Authorities Law does not expressly exempt the Authority from the Commonwealth Documents Law.").

The Commonwealth Court further differed with the Authority's position that the specificity requirement reposed in Section 508 of the CDL did not extend to the CDL's separate, unconsolidated portions reflecting some of the statute's core requirements. *See supra* note 1 (referencing both the Consolidated CDL and the Unconsolidated CDL). According to the court, the consolidated and unconsolidated portions of the CDL are inextricably linked, such that Section 508 has general

10. Brief for PPA in *Germantown Cab Co. v. PPA,* 993 A.2d 933 (Pa. Cmwlth.2010) (No. 1252 C.D. 2009), at 15; *see also* 53 Pa.C.S. § 5701.1(3) (alluding to the Authority's "local focus"). *See generally Blount,* 600 Pa. at 289, 965 A.2d at 234 (referring to the Authority as "an entity unlike any other in Pennsylvania").

application to the promulgation of all Commonwealth agency regulations. *See Germantown Cab,* 993 A.2d at 941 n. 19.

The PPA also claimed that the terms of Act 94 and the Parking Authorities Law created an exemption, in any event. In the first instance, the Authority relied on the provision of Act 94 authorizing rulemaking on its part, as follows:

> The authority may prescribe such rules and regulations as it deems necessary to govern the regulation of taxicabs within cities of the first class under this chapter. The authority has the powers set forth in this section *notwithstanding any other provision or law* or of the articles of incorporation of the authority.

*Id.* at 938–39 (quoting 53 Pa.C.S. § 5722) (emphasis in original).[11] The Commonwealth Court, however, took a narrower view of this prescription, explaining:

> The provision means just that, *i.e.,* that regardless of what other statutes may state about the powers of any authority, including other parking authorities, the Philadelphia Parking Authority has the power to adopt regulations. Indeed, at oral argument, the Authority acknowledged that it had never adopted a regulation in its history, which began in 1950, until it promulgated its taxicab regulation. Section 5722 establishes the Authority's *power* to adopt taxicab regulations. It is silent about the *procedures* by which the Authority will exercise that power. Those procedures are set forth in the Commonwealth Documents Law, and they apply to all Commonwealth agencies when they exercise their statutory power to promulgate regulations.

*Germantown Cab,* 993 A.2d at 941 (emphasis in original).

Additionally, the Authority gleaned support for its position from its express exemption from the requirements of the Commonwealth Attorneys Act,[12] suggesting that an *in pari*

11. The passages of Act 94 pertaining to regulation of limousine services contain a parallel provision. *See* 53 Pa.C.S. § 5742. Throughout the briefs, the arguments involving both taxicab and limousine services regulation are essentially the same, and our decision here is to be read as concerning both.

12. The relevant provision of the Parking Authorities Law states:

*materia* construction should be applied to extend such exemption to the CDL. The Commonwealth Court, however, regarded the scope of the express exemption more narrowly, finding that it did not so much as extend to the entire Commonwealth Attorneys Act, let alone to the CDL. *See Id.* at 942.

The intermediate court also differed with the PPA's position that the advisory committee created under Act 94 comprised a substitute rulemaking structure. *See* 53 Pa.C.S. § 5702(a) ("There is hereby established an advisory committee to be known as the City of the First Class Taxicab and Limousine Advisory Committee."). In this regard, the court observed that the statute was indefinite in terms of what must be submitted to this committee, and the committee's actions were "strictly advisory" in any event. *Germantown Cab*, 993 A.2d at 939 n. 15 (quoting 53 Pa.C.S. § 5702(a)); *see also id.* (remarking that "[t]he advisory committee is not a substitute for the role of the Attorney General and the Independent Regulatory Review Commission in the regulatory review process").

Turning to the Authority's claim that a regulatory void would occur were it deemed to lack the ability to implement regulations very quickly, the Commonwealth Court cited to Section 22(2) of Act 94, which provided that salient rules and regulations of the PUC would remain in effect until specifically amended, rescinded, or altered by the Authority. *See* 53 Pa.C.S. § 5701 (Historical and Statutory Notes) (quoting Act 94, § 22). The court reasoned that:

> The Authority's concern about a regulatory void is valid as a matter of good government. However, that concern does not relieve the Court of the obligation to enforce the appli-

(d) An authority has all powers necessary or convenient for the carrying out of the purposes under this section, including:

\* \* \*

(25) In cities of the first class, to appoint and fix the compensation of chief counsel and assistant counsel to provide it with legal assistance. The provisions of the act of October 15, 1980 (P.L. 950, No. 164), known as *the Commonwealth Attorneys Act, shall not apply to parking authorities in cities of the first class.*

53 Pa.C.S. § 5505(d)(25) (emphasis added).

cable statutes as they are written. In any case, the Authority has options. The Authority may be able to take enforcement actions for violation of Chapter 57, independent of any implementing regulation. It is not as clear to the Court, as it is to the Parking Authority, that the PUC's regulations have been nullified where the Authority has not yet adopted a valid regulation. In any case, the Commonwealth Documents Law allows an agency to promulgate a regulation on an emergency basis if

> [t]he agency for good cause finds ... that the procedures specified in sections 201 and 202 [notice of proposed rule making and consideration of written comments] are in the circumstances impracticable, unnecessary or contrary to the public interest.

45 P.S. § 1204(3). Finally, or course, the Authority may seek relief from the legislature.

*Germantown Cab,* 993 A.2d at 943 (footnote omitted and alterations in original).

The Commonwealth Court's ultimate holding reflected that, because the Authority's regulations were not deposited with the Legislative Reference Bureau per Section 207 of the Unconsolidated CDL, 45 P.S. § 1207, Section 208 dictated that they were not valid for any purpose, *id.* § 1208. *See Germantown Cab,* 993 A.2d at 942–43.

## II. Arguments

Presently, the PPA elaborates on the contentions it advanced before the Commonwealth Court, arguing, principally, that Act 94 specifically replaced the statutory rulemaking procedure applicable to statewide agencies with a streamlined process tailored to the agency's more local mission and focus. It is the Authority's position that this state of affairs is amply reflected in terms of its delegated authority to promulgate regulations "notwithstanding any other provision or law." Brief for the PPA at 17 (quoting 53 Pa.C.S. § 5722 and contending that "[t]his language shows the intention of the General Assembly to exempt the PPA from the traditional

Commonwealth rulemaking process, including the Commonwealth Documents Law and the Regulatory Review Act").[13]

Indeed, according to the Authority, the notwithstanding-other-law term has no role, meaning, or effect other than as an exemption from the CDL. In response to the Commonwealth Court's reasoning—*i.e.*, that Section 5722 is intended merely to unequivocally confer rulemaking authority and not to circumscribe attendant procedures—the PPA contends that, were this the case, the notwithstanding-other-law proviso would be surplusage. In this regard, the Authority explains that the Statutory Construction Act already prioritizes specific statutory provisions (such as a conferral of the power to prescribe taxicab regulations under Section 5722) over more general ones (*i.e.*, any other statutes concerning the power to adopt regulations).[14] Moreover, according the Authority, there simply are no statutory provisions conflicting with the Commonwealth Court's interpretation of Section 5722, thus rendering the notwithstanding-other-law term devoid of meaning and impossible to execute, again, were the court's understanding of Section 508 to prevail. *See* 1 Pa.C.S. §§ 1921(a), 1922(1), (2).[15] The Authority references *City of Philadelphia*

13. In various instances in its main brief, however, the PPA recognizes that the notwithstanding-other-law language "could have been more precise" in terms of conveying the meaning the Authority ascribes to it. Brief for the PPA at 17; *see also id.* at 23 ("The 'notwithstanding' language in Section 5722 is open to different interpretations."). In other passages, nonetheless, the Authority couches the provision as "a clear and direct expression of the intention to exempt the PPA from the Commonwealth Documents Law and other parts of the statewide rulemaking process." *Id.* at 17.

14. *See* 1 Pa.C.S. § 1933; Brief for the PPA at 25 ("[T]here is no need for the General Assembly to create a special rule for resolving conflicts between Section 5722 and other statutes. The General Assembly has already created such rules in the Statutory Construction Act.").

15. Attempting to reinforce its position that the notwithstanding-other-law language serves a special purpose in its particular case, the Authority indicates that its power to promulgate regulations is otherwise consistent with that of all other all parking authorities. For the proposition that all parking authorities possess rulemaking powers, the Authority cites Section 5508.1 of the Parking Authorities Law. *See* Brief for the PPA at 26.

*v. Clement & Muller, Inc.*, 552 Pa. 317, 715 A.2d 397 (1998) (holding that the meaning of a notwithstanding-other-law proviso was straightforward in reinforcing the plain meaning of the legislative prescription to which it was attached), as an example of a decision in which this Court afforded a natural effect to similar terms.[16]

The Authority acknowledges that an explicit statutory reference to the CDL would have been "a more precise method" of creating an exemption to the statutory rulemaking procedures. Brief for the PPA at 30. It nevertheless provides a lengthy refutation to the position of the Commonwealth Court and Appellees that an express exemption is required, under Section 508 of the Consolidated CDL. *See* 45 Pa.C.S. § 508. In its first point along these lines, the Authority sets out to prove that Section 508 simply does not extend to the Unconsolidated CDL (and in particular, its Sections 207 and 208, upon which the Commonwealth Court's opinion was grounded). In this regard, the PPA accurately explains that Section 508's language is keyed to "the provisions of this part," which is Part II of Title 45 of the Pennsylvania *Consolidated* Statutes, entitled "Publication and Effectiveness of Commonwealth Documents." Thus, the Authority urges, Section 508 has no application to Chapter 5 of Title 45 of the Pennsylvania Statutes, where the *unconsolidated* portion of the CDL is reposited (since said chapter is not within "the provisions of this part" specified in Section 508).[17]

Next, the PPA contrasts the statutory language used to convey rulemaking power to it with that which pertained to

By its terms, however, Section 5508.1 pertains only to cities of the first class (*i.e.*, Philadelphia). *See* 53 Pa.C.S. § 5508.1(a). Thus, the Authority's argument, in this regard, is not well considered.

16. In this regard, however, *Clement & Muller* lends greater support to the Commonwealth Court's and Appellees' position than the Authority's, since they ascribe to the more straightforward meaning of the main pronouncement of Section 5722, *i.e.*, simply that the Authority is afforded the power to make rules and regulations. *See* 53 Pa.C.S. § 5722.

17. In advancing this argument, the Authority provides an extensive discussion of how it is that the CDL came to be divided into consolidated and unconsolidated parts. *See* Brief for the PPA at 30–32.

the PUC in its previous regulation of taxicabs in Philadelphia. The Authority develops that the PUC was authorized to "prescribe such rules and regulations as it deems necessary to govern the regulation of taxicabs in cities of the first class pursuant to the provisions of [Chapter 24 of the Public Utility Code]." Brief for the PPA at 33 (66 Pa.C.S. § 2412 (repealed)). Stressing that the enabling statute pertaining to the PUC contained no notwithstanding-other-law modifier, the PPA reiterates that "[t]he addition of the second sentence in Section 5722 must have some meaning." *Id.*[18]

In its next line of argument, the Authority posits that the General Assembly must have intended to create a streamlined rulemaking procedure for its use, since compliance with the burdensome and time consuming procedures required under the CDL would have resulted in a regulatory void. The Authority acknowledges, as it must, that the Legislature specifically addressed the transition of regulatory authority from the PUC, *inter alia,* as follows:

> Regulations, orders, programs and policies of the commission under 66 Pa.C.S., Ch. 24 [the "Medallion Act"] and concerning limousine service regulation within cities of the first class shall remain in effect until specifically amended, rescinded or altered by the authority.

Act 94, § 22(2). Nevertheless, the PPA asserts that "nothing indicates that Section 22(2) was intended to continue the validity of the PUC's regulations, orders, programs and policies *after* the transfer of regulatory oversight and the corresponding repeal of the PUC's statutory authorization under the Medallion Act." Brief for the PPA at 38 (emphasis in original).[19] In this respect, the Authority also argues that the

18. *See also* Brief for the PPA at 34 ("Given these differences in language, it is clear that the PPA was given broader regulatory power than the PUC. While the PUC is required to be consistent with and comply with the statewide rulemaking laws, such as the Commonwealth Documents Law and the Regulatory Review Act, the Authority is specifically exempted from such laws and may promulgate regulations notwithstanding the procedural steps used by other Commonwealth agencies.").

19. The Authority's arguments along this line are difficult to follow, as they depart from the plain language used by the Legislature precisely to

PUC's regulations and policies could not be given any effect after the PUC was divested of jurisdiction and the underlying legislation, the Medallion Act, was repealed.[20] Finally, in a rather circular argument, the PPA relies on its own actions in promulgating regulations outside the framework of the CDL as supplanting the PUC's rules and regulations.[21]

The Authority's next main line of contention posits that the Legislature's affordance of an express exemption from the Commonwealth Attorneys Act, see 53 Pa.C.S. § 5505(d)(25), demonstrates that the Assembly also meant to grant an exemption from the CDL. In developing this argument, the PPA observes that, within the provisions of the Commonwealth Attorneys Act delineating responsibilities of the Pennsylvania Attorney General, the enactment specifies that "[t]he

prevent the regulatory void the Authority insists would occur absent localized rulemaking procedures.

Indeed, the statutory provision immediately preceding Section 22(2) makes clear that the Legislature intended to shift the PUC's regulatory powers to the Authority for its *prospective use* in regulating taxicabs and limousines. *See* Act 94, § 22(1) (*"The [PUC's]* ... *powers*, duties, contracts, rights and obligations which are utilized or accrue in connection with the functions under [the Medallion Act] and in connection with limousine regulation in cities of the first class *shall be transferred* to the Philadelphia Parking Authority in accordance with an agreement between the commission and the authority." (emphasis added)). Section 22(1) dovetails with Section 22(2)'s extension of the validity of PUC regulations, orders, programs, and policies indefinitely into the Authority's tenure. In light of these explicit transfer-related provisions, it is difficult to afford any credence to the PPA's repeated refrain that it "was not explicitly empowered to enforce any of the PUC's regulations[,] orders, programs and policies or the Public Utility Code itself." Brief for the PPA at 39.

20. This argument appears to overlook the General Assembly's prescription for the continuing enforcement of the PUC's rules and regulations by the Authority, per Section 22 of Act 94. *See supra* note 19.

21. The circuitousness arises from the interdependence of the Authority's argument with its success on its central claim that it is not otherwise subject to the CDL. To the degree the Authority must, in fact, comply with the CDL, its invalidly promulgated regulations are not to be given any effect for any purpose. *See* 45 P.S. § 1208. Thus, if the CDL applies, the Authority's invalidly promulgated regulations cannot, in and of themselves, be deemed to have supplanted the PUC's regulations, which were transferred into the Authority's regulatory province along with the power to enforce them. *See* Act 94, §§ 21, 22.

Attorney General shall review for form and legality, all proposed rules and regulations of Commonwealth agencies before they are deposited with the Legislative Reference Bureau as required by section 207 of the [CDL]." 71 P.S. § 732–204(b). According to the Authority, by exempting it from the Commonwealth Attorneys Act, the Legislature thus "eliminated a level of review" generally required within the Commonwealth rulemaking process. Brief for the PPA at 18. The PPA takes issue with the Commonwealth Court's position that the Legislature meant only to permit the Authority to appoint its own legal staff, both because the exemption from the Commonwealth Attorneys Act is broadly phrased in Section 5505(d)(25), *see* Brief for the PPA at 44 ("Importantly, Section 5505(d)(25) of the Parking Authority Law cites to the entire Commonwealth Attorneys Act."), and because the Commonwealth Attorneys Act internally authorizes independent agencies, such as the Authority, to appoint their own legal staff in any event. *See* 71 P.S. § 732–401; *compare id.* § 732–301 (providing for the appointment, by General Counsel, of such chief counsel and assistant counsel as are necessary for the operation of each executive agency).

In its arguments pertaining to the Commonwealth Attorneys Act, the PPA stresses the statute's interrelationship with the CDL. In this respect, the Authority urges an *in pari materia* construction to support the conclusion that, when the Legislature said "the Commonwealth Attorneys Act," it also meant "the Commonwealth Documents Law." *See, e.g.,* Brief for the PPA at 48 ("The Commonwealth Court failed to recognize that both statutes are related intrinsically to each other, and are fundamental components of the statewide regulatory review process for Commonwealth agencies[;] ... [i]n short, you cannot have one without the other.").[22]

22. Similarly, the Authority argues that, because it has been treated as exempt from the requirement, under the Administrative Code, of preparation of a fiscal note relative to proposed regulations by the Office of Budget, *see* 71 P.S. § 232, this also should be taken to mean that it is exempted from the requirements of the CDL. *See* Brief for the PPA at 49–50.

Underlying all of the Authority's arguments is its belief that there simply is no practical reason to subject it to a cumbersome regulatory review process. In the PPA's view, its practices of providing notice and of conferring with its advisory committee are an adequate substitute for the CDL's formalized and time-consuming procedures. *See, e.g., id.* at 21–22 (indicating that the Authority's advisory committee "ensures that the entire evolutionary process of a regulation is transparent and accessible to all interested parties" and "serves the same functions as [the] IRRC"). The Authority also perceives no need to subject it to the requirements of the Regulatory Review Act, given that the Governor maintains a degree of oversight by way of the appointment process. *See id.* at 25. Furthermore, the PPA expresses the concern that the invalidation of its regulations endangers the public, as its prescriptions are designed to assure the maintenance of safe, quality taxicab and limousine service. *See, e.g., id.* at 50–51 ("Without the ability to enforce these basic safeguards, passengers and the general public face the risk of injury or death from the operation of taxicabs in Philadelphia.").

Finally, the Authority explains that, in an abundance of caution, it has moved forward with a proposed rulemaking in compliance with the statutory rulemaking regime generally applicable to Commonwealth agencies.

Appellees, for their part, place prime emphasis on Section 508 of the Consolidated CDL, which, again, provides that "[n]o subsequent statute shall be held to supersede or modify the provisions of this part except to the extent that such statute shall do so expressly." 45 Pa.C.S. § 508. They regard the bulk of the PPA's arguments as distracting, prolix, and ineffectual attempts to divert focus from this controlling requirement of an express exemption. Thus, for instance, Appellees maintain that there is no relevance to the Authority's status as a "hybrid agency" or relationship with an advisory committee. Appellees also do not regard Section 5722's notwithstanding-other-law proviso as supplying the necessary, express exemption. Consistent with the Commonwealth Court's analysis, Appellees express confidence that the General Assembly

knows how to craft an express exemption from the CDL when it wishes to do so.[23]

Appellees further take issue, on their terms, with most of the implications the PPA derives from Act 94 and its other enabling legislation. For example, Appellees highlight that the salutary purpose of the CDL is to promote public participation in the promulgation of Commonwealth agency regulations. *See Germantown Cab*, 993 A.2d at 937. To that end, Appellees do not regard the Authority's non-specified notice procedures and the potential conferral with a "strictly advisory" committee as any kind of an adequate substitute. 53 Pa.C.S. § 5702(a).

As to the Commonwealth Attorneys Act, Appellees view the statutory exemption in Section 5505(d)(25) as confined thereto and not as extending to the CDL. Appellees explain that the cross-reference to the CDL relied upon by the PPA appears within a portion of the Commonwealth Attorneys Act addressing the duties of the Attorney General, and thus, it does not concern the type of requirement from which the Authority might be exempted. Moreover, Appellees do not believe that generally exempting an agency from the Commonwealth Attorneys Act has the corollary effect of alleviating the Attorney General's duties under that statute, or of negating the agency's own duties and obligations under an entirely distinct statute (namely, the CDL). Appellees do not necessarily ascribe to Commonwealth Court's narrower interpretation of the PPA's exemption from the requirements of the Commonwealth Attorneys Act, but, in all events, they do not regard such exemption as yielding a derivative one relative to the distinct requirements of the CDL.[24]

**23.** As examples, supplementing the Commonwealth Court's references to the Agricultural Development and Gaming Acts, Appellees also reference: the Farm Safety and Occupational Health Act, 3 P.S. §§ 1901–1915 (*see id.* § 1913); the Consolidated Weights and Measures Act, 3 Pa.C.S. §§ 4101–4194 (*see id.* § 4112(d)); the Domestic and Sexual Violence Victim Address Confidentiality Act, 23 Pa.C.S. §§ 6701–6713 (*see id.* § 6712); and the Public School Code of 1949, 24 P.S. §§ 1–101 to 27–2702 (*see id.* § 13–1376(c.8)).

**24.** *See* Brief for Appellees at 16 ("Whether the Commonwealth Court was correct in its assessment of the Authority's exemption from the

Appellees further develop that the regulatory review process pertaining to Commonwealth agency rulemaking evolved on account of the General Assembly's concern with the large number of regulations being promulgated without undergoing effective review concerning cost benefits, duplication, inflationary impact, and conformity to legislative intent. *See* 71 P.S. § 745.2. In terms of the Regulatory Review Act, Appellees indicate:

> The intended purpose of the RRA is to establish a method for ongoing and effective legislative review and oversight in order to foster executive branch accountability; to provide for primary review by a commission with sufficient authority, expertise, independence and time to perform that function; to provide ultimate review of regulations by the General Assembly; and to assist the Governor, the Attorney General, and the General Assembly in their supervisory and oversight functions. To the greatest extent possible, this act is intended to encourage the resolution of objections to a regulation and the reaching of a consensus among the commission, the standing committees, interested parties and the agency.

Brief for Appellees at 17.

Appellees also highlight that, generally, when the Legislature has granted exemptions from the CDL, the purpose is to allow the agencies to fill the regulatory gap that would otherwise have existed between the effective date of their enabling acts and the date the agencies completed the normal statutory rulemaking process. *See supra* note 23 (reflecting examples of statutes representative of the drafting technique used toward such end). It is Appellees' position that a similar exemption was unnecessary in the PPA's circumstance, since the Legislature specifically addressed the potential for a regulatory gap in Act 94's Section 22, via PUC regulations already

CAA, is irrelevant since it is clear that the General Assembly requires other agencies to comply with the CDL, despite granting exemptions to the entire CAA." (citing 4 Pa.C.S. §§ 1201.1(b)(2), 1202(a)(2) (exempting the Gaming Control Board from the requirements of the Commonwealth Attorneys Act, while at the same time subjecting the agency, as a general rule, to compliance with statutory rulemaking procedures))).

in place and adopted by that agency in accordance with the required rulemaking procedures. *See* Act 94, § 22. In this regard, Appellees stress that the PPA's allusions to a regulatory void squarely contradict Act 94's clear and unambiguous language. *See supra* notes 19–20.

### III. Discussion

■ Resolution of these appeals requires us to interpret the CDL and the enabling statutes governing the PPA. As to such matters of law, our review is plenary. *See, e.g., Alekseev v. City Council of Phila.,* 607 Pa. 481, 484, 8 A.3d 311, 313 (2010).

■ The *en banc* Commonwealth Court has amply laid the groundwork for addressing the Authority's present challenge, as related above. Since the Authority is a Commonwealth agency for relevant purposes, *see Blount,* 600 Pa. at 289, 965 A.2d at 234, the CDL's procedural requirements pertaining to rulemaking by such agencies facially apply, in the absence of some type of exemption. At least with respect to the requirements reposited in the Consolidated CDL,[25] the General Assembly specifically has required that exemptions must be express. *See* 45 Pa.C.S. § 508.

■ Indeed, in its reply brief, the PPA recognizes that "the effectiveness of any exemption from the 1976 part [of the CDL, *i.e.,* the Consolidated CDL] is dependent on naming or citing thereto." Reply Brief for the PPA at 6 n. 16. In light of this understanding—which is common among the prior reviewing court and now the litigants—the Authority has gone to great lengths to attempt to portray a firewall between the consolidated and unconsolidated portions of the CDL to insulate itself from Section 508's reach. We are unable to credit the PPA's perspective in this regard, however, since, as the Commonwealth Court recognized, the two facets of the CDL are inextricably interwoven.

**25.** *See, e.g.,* 45 Pa.C.S. § 722(c) ("Every agency ... shall cause to be transmitted to the [Legislative Reference Bureau] for deposit as herein provided two certified duplicate original copies of all documents issued, prescribed or promulgated by the agency ... which are required by or pursuant to this subchapter or any other provision of law to be deposited or published, or both, under this part[.]").

Initially, we appreciate that the process of attempting to consolidate statutes into a unified framework is a difficult, time-consuming, and exacting undertaking, which requires a sustained combination of painstaking effort, meticulous detail orientation, and political will and consensus. There are many examples of success in the undertaking, but the experience with the statutory rulemaking requirements applicable to Commonwealth agencies demonstrates that desired outcomes may be more difficult to achieve than may be hoped.

At least at one time, the General Assembly appears to have contemplated that these procedures would be reposited in Chapter 3 of Title 2 of the Pennsylvania Consolidated Statutes (encaptioned, "Promulgation of Regulations"). Chapter 3, however, presently remains empty, serving only as a place-holder bearing a "reserved" designation. *See* 2 Pa.C.S., Ch.3.

The Legislature's intentions for this chapter can be gleaned from the 1976 legislation embodying the Codified CDL, since, in various locations, this statute makes reference to Chapter 3. *See, e.g.,* 45 Pa.C.S. §§ 722, 901, 905. Of course, such references were aspirational in character, as the chapter did not exist at the time (as it still does not), nor did the broader Title 2. To compensate for such otherwise empty references, the General Assembly provided translational instructions, as follows:

Conversion of references pending codification of Title 2.— Pending codification of Title 2 of the Pennsylvania Consolidated Statutes (relating to administrative law and procedure) a reference in Title 45 of the Pennsylvania Consolidated Statutes to "Subchapter A of Chapter 3 of Title 2 (relating to regulations of Commonwealth Agencies)" shall be deemed a reference to sections 102 and 201 through 208 of the [Unconsolidated CDL] and a reference to "2 Pa.C.S. § 301 (relating to notice of proposed rule making)," "2 Pa.C.S. § 302 (relating to adoption of administrative regulations)," "2 Pa.C.S. § 305 (relating to approval as to legality)," "2 Pa.C.S. § 306 (relating to format of regulations)," or "2 Pa.C.S. § 308 (relating to unfiled administrative regula-

tions invalid)" shall be deemed to be a reference to sections 201, 202, 205, 206, or 208 of said act, respectively.

Act of July 9, 1976, P.L. 877, No. 160, § 4.

While these instructions seem straightforward enough, a difficulty arises from the fact that Title 2 was enacted in 1978, but it did not contain the contemplated scheme of regulation for Commonwealth agency rulemaking (*i.e.*, a Chapter 3). *See* 2 Pa.C.S., Ch. 3 (reserved) (entitled "Promulgation of Regulations"). Nevertheless, at least on their face, the translational instructions would appear to have expired (since they were designed to be effective only until the enactment of Title 2).

A provision of Title 2 appears to have been designed to account for this lapse. In Section 103(b), the Legislature provided a shorthand version, as follows:

> **(b) Rule making references**—Whenever any statute makes reference to the Administrative Agency Law for procedures relating to the promulgation of administrative regulations, such reference shall hereafter be deemed to be a reference to the [Unconsolidated CDL].

2 Pa.C.S. § 103(b). This provision, however, also appears to suffer from a drafting oversight, since the "Administrative Agency Law" is defined in the preceding subsection as encompassing only Subchapters A of Chapters 5 and 7 of Title 2, which concern practice and procedure of Commonwealth agencies and judicial review of agency action, but do not concern themselves with agency rulemaking. *See id.* § 103(a).

In this landscape, the Consolidated CDL and the Unconsolidated CDL have been read in the only way in which they can be sensibly understood, that is, according to the original translational directions (and consistent with the apparent purpose of Section 103(b)), so that the Consolidated CDL materially incorporates the Unconsolidated CDL.

For example and of substantial relevance here, Section 722(c) of the Consolidated CDL provides:

> Every agency ... shall cause to be transmitted to the bureau for deposit as herein provided two certified duplicate original copies of all documents issued, prescribed or pro-

mulgated by the agency ... which are required by or pursuant to this subchapter or any other provision of law to be deposited or published, or both, under this part; *in default of which any such document, except a document rendered entirely void by such default pursuant to 2 Pa. C.S. § 308 (relating to unfiled administrative regulations invalid) or any similar provision of law,* shall be effective only to the extent provided in section 903 of this title (relating to effective date of documents).

45 Pa.C.S. § 722(c) (emphasis added). Under the original translational instructions, the reference to "2 Pa.C.S. § 308" is plainly directed to Section 208 of the Unconsolidated CDL, 45 P.S. § 1208. Moreover, given that the contemplated consolidation of rulemaking procedures within Chapter 3 of Title 2 did not come to pass, this is the only rational way in which the statute can be read to this day.

Notably, the integral interrelationship between the consolidated and unconsolidated portions of the CDL works in both directions. For example, various passages of the Unconsolidated CDL make material references to its own Section 409 as providing for the manner in which agency regulations were to be deposited with the Legislative Reference Bureau. *See, e.g., id.* §§ 1207, 1208. Section 409, however, was repealed upon the enactment of the Consolidated CDL, which provided an updated treatment for that subject matter. *See* Act of July 9, 1976, P.L. 877, No. 160, § 7. Therefore, as is reflected in the text of the Purdon's compilations of the Unconsolidated CDL, the only sensible way to read the extant references to Section 409 is as being to the correlative terms of the Consolidated CDL. *See* 45 P.S. §§ 1207, 1208 (Purdons) (providing explanatory footnotes attached to the textual reference to former Section 409 as follows: "45 P.S. § 1409 (repealed; see, now, 45 Pa.C.S.A. § 501 et seq.)"). To read the statutes otherwise would contravene the presumption that the General Assembly intends the entire statute to be effective and certain. *See* 1 Pa.C.S. § 1922(2).

The Authority's own arguments appear to reflect an appreciation that references to Title 2 contained in the Consol-

idated CDL must be read as being directed to the Unconsolidated CDL.[26] Indeed, although caution in the application of the doctrine of *in pari materia* is warranted,[27] there would seem to be no better instance in which an *in pari materia* overlay would be justified than as to the CDL. *See* 1 Pa.C.S. § 1932(b) ("Statutes in pari materia shall be construed together, if possible, as one statute).

Presently, it is also meaningful that the Consolidated CDL overlaps with the Unconsolidated CDL in material respects. For example, several provisions of the Consolidated CDL reflect the requirement of deposit with the Legislative Reference Bureau as the essential prerequisite to such codification. *See* 45 Pa.C.S. §§ 509 ("Format of documents"), 722 ("Deposit of documents required"); *see also supra* note 25. Furthermore, and as noted, the Consolidated CDL itself also delineates the consequences of a failure to follow the prescribed procedures in terms of invalidity. *See* 45 Pa.C.S. § 722(c). Accordingly, the Authority's argument that Section 508's requirement of an express exemption does not extend beyond the terms of the Consolidated CDL cannot insulate the Authority from the CDL's core regulatory requirements. At best, the Authority's main argument turns on the tenuous proposition that Appellees and/or the Commonwealth Court failed to select the correct passages from within an inextricably interrelated statutory scheme in support of their positions (*i.e.*, a passage such as Section 722(c), as to which Section 508's requirement of an express exemption would apply most directly).

As developed above, however, there simply is no firewall between the Consolidated CDL and the Unconsolidated CDL.

---

26. *See, e.g.,* Reply Brief for the PPA at 4–5 (citing Section 905 of the Consolidated CDL for the proposition that the statute refers to the Unconsolidated CDL, apparently based on the understanding that Section 905's references to absent Title 2 provisions are to be taken as directed to the Unconsolidated CDL).

27. *See, e.g., Oliver v. City of Pittsburgh,* 608 Pa. 386, 394–95, 11 A.3d 960, 965–66 (2011) (expressing circumspection about the application of such principle and declining to extend an *in pari materia* construction to particular provisions of the Workers' Compensation Act and the Heart and Lung Act).

Thus, whether the Commonwealth Court and Appellees may have cited Section 207 and 208 of the Unconsolidated CDL or to Section 722(c) of the Consolidated CDL, a Commonwealth agency is required to deposit regulations with the Legislative Reference Bureau as a prerequisite to their effectiveness. Moreover, Section 508 reflects that, when the General Assembly wishes to afford exemptions from such requirement, it will make its intentions express.

■ In summary, the PPA has acknowledged that an express exemption, as contemplated by Section 508, requires a naming or citation to the CDL. *See* Reply Brief for the PPA at 6 n. 16. As discussed above, it is clear that Section 508 extends to exemptions from the requirement of the deposit of regulations with the Legislative Reference Bureau. Since neither the Parking Authorities Law nor Act 94 names or references the CDL in the conferral of an exemption, the Commonwealth Court properly rejected the Authority's claims.

In light of the above, the Authority's remaining arguments might reasonable be viewed as being collateral. To the degree that the Authority did not intend that such arguments would be displaced by its acceptance that an express exemption under Section 508 requires naming or citation to the CDL, we take this opportunity to comment briefly on the alternative contentions.

In terms of the Authority's arguments centered on the notwithstanding-other-law language employed in the conferral of its rulemaking power, *see* 53 Pa.C.S. § 5722, we have substantial reservations about reading too much into such language. As reflected in the discussion above, in the process of legislative drafting, the General Assembly is faced with a complex landscape of existing statutes, many of which are amenable to differing interpretations by litigants and have yet to be finally interpreted or construed by the courts. Against such a background, the notwithstanding-other-law language serves to emphasize the priority the Legislature places on a contemporaneous pronouncement. In the PPA's case, in terms of statutes with which the Legislature may have been

concerned, one need look no further than the Parking Authorities Law, which appears on its face to center the regulatory decision-making of most municipal parking authorities around "fix[ing], alter[ing], charg[ing], and collect[ing] rates and other charges." 53 Pa.C.S. § 5505(d)(9). As such, the Authority simply is asking too much in seeking a construction of the Assembly's unprecedented decision to vest a parking authority with broad regulatory powers over certain carriers and imbue it with concomitant rulemaking authority "notwithstanding any other provision or law" as necessarily subsuming material corollaries beyond what is manifested in the enabling language.

The same can be said about the exemption from the "Commonwealth Attorneys Act," *id.* § 5505(d)(25), in that the Authority asks us to read far too much into said exemption, effectively translating it into one from "the Commonwealth Attorneys Act, the Commonwealth Documents Law, and the Regulatory Review Act." The legislative shorthanding involved in broadly exempting an agency from a statute which covers far more ground than the mere delineation of agency responsibilities is bound to yield some degree of ambiguity. Since, however, an ambiguity is not tantamount to an express exemption, we reject the PPA's invitation to discern a derivative exemption from the salient requirements of the CDL. *See* 45 Pa.C.S. § 508.[28]

The exemption from provisions of the Administrative Code discussed by the Authority is not express on the face of Act 94 or the Parking Authorities Law,[29] but rather, is a discrete consequence arising out of the fact that the Authority is self-

---

**28.** As the Commonwealth Court's reasoning reflects, the context of the exemption—*i.e.*, its location within a passage of the Parking Authorities Law addressing the appointment of counsel—is also instructive. *See supra* note 12 (quoting 53 Pa.C.S. § 5505(d)(25)).

**29.** *See* Brief for the PPA at 49 (explaining that the exemption is reflected in determinations of the Independent Regulatory Review Commission and the Attorney General, which did not require a fiscal note for the PPA's proposed regulations, as otherwise would be required under Section 612 of the Administrative Code, 71 P.S. § 232).

funded. *See* Brief for the PPA at 49. Accordingly, we find it to be of little relevance here.

The Authority's allusions to a regulatory void raise legitimate public policy concerns, but these are not persuasive in terms of the requirement to comply with the CDL for the reasons we have discussed above. *See supra* notes 19–20. As explained, the General Assembly took pains to assure that the PUC's rules and regulations would remain extant until the Authority provided differently, apparently contemplating that the Authority would do so in an orderly and lawful fashion. *See* Act 94, § 22. To the extent that a regulatory void has unfolded, this reasonably may be viewed as a result of the PPA's failure to take protective measures to maintain the integrity of the regulatory framework it inherited from the PUC throughout the years during which it has been contesting its Commonwealth agency status, *see Blount,* 600 Pa. at 277, 965 A.2d at 226, then litigating the fallback position that it was otherwise exempted from the rulemaking requirements applicable to Commonwealth agencies. In any event, it is the terms of the material statutes—and not the ensuing anecdotal experience—which governs the statutory interpretation. Moreover, since that the PPA's presently promulgated regulations cannot be deemed valid for any purpose, *see* 45 P.S. § 1208; 45 Pa.C.S. § 722(c), those regulations themselves, at least, do not serve as an impediment to enforcement by the Authority of the prior regulatory regime until it can comply with its rulemaking responsibilities as a non-exempt Commonwealth agency.[30]

Finally, we recognize the practical considerations the Authority wishes us to rely upon to allow for an exemption. Certainly, the formalism of the CDL inhibits such practicalities in many agency rulemaking scenarios where expediency otherwise might be desirable. Nevertheless, the Legislature has settled on a more global approach to Commonwealth

---

**30.** Notably, the PUC's Medallion Program regulations, which were reposited in Chapter 30 of Title 52 of the Pennsylvania Code, subsumed requirements aimed at the protection of public safety correlating to the PPA regulations at issue here (including licensure and vehicle inspection requirements).

agency rulemaking which prioritizes regularity and formality over those sorts of considerations, at least as the general rule.[31] Of controlling relevance here, this is reflected in Section 508's requirement of an express exemption to sanction Commonwealth agency departures from the CDL.

The order of the Commonwealth Court is affirmed.

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD, McCAFFERY and ORIE MELVIN join the opinion.

---

**31.** We do not discount the Commonwealth Court's observation that certain portions of the CDL allow for some flexibility in appropriate circumstances. *See Germantown Cab,* 993 A.2d at 943.